UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AL'CLIFFORD L. WINFREY,

                Plaintiff,                    Case No.  04-72388

v.                                   District Judge Gerald E. Rosen
                                   Magistrate Judge R. Steven Whalen

ROBERT NILL, et al.,

                Defendant.

_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Robert Nill's Motion for Summary Judgment [Docket #18], which has been referred for Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion be GRANTED IN PART AND DENIED IN PART.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2004, Plaintiff Winfrey filed a *pro se* civil complaint in Wayne County Circuit Court, naming as Defendants Robert Nill and Robert Kibler (Detroit Police Officers), John Doe (Chief of Detroit Police Department), and Anthony Topp (Internal Affairs Officer with Detroit Police Department).  On June 28, 2004, Defendant Nill, represented by the City of Detroit Law Department, filed a Notice of Removal of the action to this Court, pursuant

-1-

to 28 U.S.C. §§1441 and 1443(2).  In its Notice, Defendant stated, at ¶5, "Because Plaintiff bases this action in part on the United States Constitution and 42 U.S.C. 1983, Defendant City of Detroit removes this action to this Court, invoking the Court's federal question jurisdiction."

On April 4, 2005, the undersigned filed a Report and Recommendation that the Complaint be dismissed without prejudice as to Defendants Kibler and Doe for failure to prosecute, pursuant to Fed.R.Civ.P. 4(m).  Subsequently, Plaintiff filed a motion to amend the Complaint to drop all Defendants except for Nill.  The Court granted the motion to amend on July 5, 2005.

As originally filed in state court, the Complaint enumerates six separate Counts, as follows:

    Count I:        Negligence

    Count II:       Abuse of Power

    Count III:      Violation of Statutory Duty

    Count IV:       Perjury

    Count V:        Tortious Infliction of Emotional Distress

    Count VI:       Conspiracy to Deny Constitutional Rights

*See Complaint*, p.2.

In setting forth his specific allegations in Count III (Breach of Statutory Duties), Plaintiff also claimed that Defendant Nill violated his Michigan and federal constitutional rights by shooting and otherwise assaulting him.  Plaintiff cited the Fifth Amendment.  *Id*.,

pp.4-5, ¶¶14-18.  In his Brief in Opposition to Motion for Summary Judgment, Plaintiff clarified the basis of his constitutional claim, stating that he "contends that the shooting and physical assault that followed were in violation of his Fourth Amendment right to be free of excessive police force."  *Plaintiff's Brief*, p.1.

The Plaintiff's claims arise out of an incident that occurred on July 27, 2002, in the City of Detroit.  The chain of events leading to this action began with an unknown person urinating on Plaintiff's mother's lawn.  Plaintiff and his brother confronted this man, and a fist fight ensued.  The Urinator and his companion eventually left the area, but threatened to return.  As the Plaintiff's mother was calling the police, these two strangers indeed returned, and began shooting at the house.  Defendant Officer Nill, who was in the area, heard the gunshots and ran to investigate.

At this point, the claims of the parties diverge.  Plaintiff alleges that a neighbor, Randall Swanigan, got out of his car with a .45 caliber pistol in his hand, said he heard some shooting, and asked what happened (Deposition Tr. of Plaintiff, 71-74).  Plaintiff denies having a gun himself.  *Id.* at 74.  He alleges that after Swanigan and his brother took off running, he heard two shots from behind, and that one or possibly two bullets hit his left arm. *Id.* at 75-79.  He states that Nill shot him.  *Id*.  Plaintiff alleges further that Nill handcuffed him, after which Nill and several other officers beat him.  *Id.* at 82.

Defendant Nill, on the other hand, claims that as he approached the scene, he saw Plaintiff standing with a short barreled rifle in his hands. Nill states that he ordered the Plaintiff to drop the weapon, but instead of complying, the Plaintiff pointed the gun toward

-3-

him.  At that point, Nill claims, he fired a single shot from his Department-issued handgun, hitting Plaintiff in the upper left arm.  *See* Tab B to *Motion for Summary Judgment* (Final Administrative Use of Force Review, 1-23-03).

As a result of this incident, Plaintiff was subsequently convicted by a Wayne County jury of possession of a short-barreled rifle, felon in possession of a firearm, and possession of a firearm during the commission of a felony.  He is currently serving a prison sentence for those convictions.

In this motion, Defendant Nill seeks dismissal with prejudice under Fed.R.Civ.P. 12(b)(1) (failure to state a claim on which relief can be granted) and Fed.R.Civ.P. 56 (summary judgment).

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state  a claim upon which relief can be granted."  Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)."  In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764,

811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial

of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.   ANALYSIS

### A.   Constitutional / Section 1983 Claim

As originally drafted, Plaintiff's state court Complaint alleged a violation of the Fifth Amendment to the United States Constitution.  On that basis, Defendant seeks a dismissal under Rule 12(b)(6), arguing that "[c]laims arising under the 5th Amendment to the Constitution of the United States appertain only to actions against the United States federal government; such claims are inappropriate when made in matters involving private or state action."

In a strictly literal sense, and without engaging in a lengthy and unnecessary discussion of the incorporation of provisions of the Bill of Rights, including the Fourth Amendment, into the Due Process Clause of the Fourteenth Amendment, *see Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), Defendant is probably right.[1]  However,

---

[1]*See San Francisco Arts and Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 543, fn. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987).  In support of his Fifth Amendment

this is the *pro se* Complaint of a prison inmate.  Such pleadings "are held to less stringent standards than those prepared by attorneys, and are liberally construed when determining whether they fail to state a claim upon which relief can be granted."  *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  *See also Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").  The factual predicate of the present Complaint clearly suggests a claim of use of excessive force by the police, which would be cognizable under 42 U.S.C. §1983 as a Fourth Amendment claim.  *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  In his response to Defendant's motion, Plaintiff clarifies the legal basis of his Complaint, stating "that the physical assault made upon him by Officer Nill was objectively unreasonable, and amounted to excessive force in violation of Plaintiff's Fourth Amendment right."  *Plaintiff's Reply Brief*, p.10.

The Court will therefore construe the Plaintiff's Complaint as alleging a Fourth Amendment excessive force claim, pursuant to 42 U.S.C. §1983.  This should neither surprise nor prejudice the Defendant, since he premised his Notice of Removal on §1983 jurisdiction, and since his qualified immunity argument is directly responsive to an excessive force theory.

---

argument, Defendant has provided a non-existent U.S. Supreme Court citation and a 1980 district court case from Pennsylvania.  *See Brief in Support of Motion for Summary Judgment*, fn. 33.

-7-

The more substantial question in this summary judgment motion is Defendant's claim of qualified immunity. Qualified immunity is an affirmative defense. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

Once a defendant has met the burden of affirmatively pleading the defense, the ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

The Supreme Court has held that in a qualified immunity analysis, the threshold inquiry must always be whether the challenged conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor, supra*. That standard is objective, and is applied without reference to the officer's subjective motivations. *Id*. In *Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004), the Court set forth the following test:

"Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

Where the excessive force claim involves several uses of force, the court must analyze each claim separately. *Gaddis*, at 772; *Dickerson v. McClellan*, 101 F.3d 1151, 1161-62 (6th Cir. 1996). In his response to the summary judgment motion, Plaintiff alleges three discrete instances of excessive force: (1) the shooting; (2) the excessive tightening of the handcuffs "in order to cause him to bleed profusely from the gunshot wound to the back of his shoulder and the exit wound in the elbow area of his arm," *Plaintiff's Brief*, p.12; and (3) the beating which occurred after he was handcuffed.

### 1.    The Shooting

Plaintiff has consistently claimed that he was not armed when Officer Nill shot him. That was his defense to the state criminal charges of felon in possession of a firearm, possession of a short-barreled rifle, and possession of a firearm during the commission of a felony, and it is the centerpiece of his allegation that Nill used unjustified and unreasonably excessive force by shooting him. Indeed, Plaintiff points to the testimony of two witnesses at his state trial who said that he did not have a gun at the time of the incident. *See Plaintiff's Exhibit I* (testimony of Richard Lucas) and *J* (testimony of Michelle Felton).

While the Plaintiff argues that the testimony of these two witnesses creates a triable issue of fact as to whether he was armed when Defendant Nill shot him, the verdict and

judgment in the state court criminal case estops him from arguing that he did not have a gun. The doctrine of collateral estoppel generally precludes relitigation of an issue of fact or law which was previously decided in a different cause of action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Collateral estoppel may be raised as a defense in a §1983 case where the prior issue of law or fact was decided in the context of a state criminal case. *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Successful application of the doctrine entails four requirements: (1) the issue in the prior case is identical to the issue in the current case; (2) the issue must have been actually litigated; (3) the issue must have been necessary and essential to judgment on the merits of the prior case; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceedings. *United States v. Real Property Known and Numbered as 415 E. Mitchell Ave., Cincinnati, Ohio*, 149 F.3d 472, 476 (6th Cir. 1998).

An essential element of all three crimes of which Plaintiff was convicted in state court–felon in possession of a firearm, possession of a short-barreled shotgun, and possession of a firearm during the commission of a felony–is *possession*. It was actually litigated in the criminal case, was essential to the judgment on the merits, and Plaintiff had a full and fair opportunity to litigate it.[2] In the present case, Plaintiff is therefore estopped from denying that he had possession of the firearm. Thus, there can be no genuinely contested issue of

---

[2] It is irrelevant that a state assault charge was dismissed prior to trial.

-10-

material fact as to the principal basis for Plaintiff's excessive force claim with respect to the shooting.

The record also supports Defendant Nill's claim that he ordered the Plaintiff to drop the weapon.  Apart from Nill's own police report and the Internal Affairs investigative conclusions, Randall Swanigan–Plaintiff's own witness–told the police that just before he observed an officer punching the Plaintiff, he heard someone say, "Put the gun down." *Plaintiff's Brief, Exhibit G.*

Finally, the record does not unambiguously support Plaintiff's argument that he was shot in the back.  The letter from Dr. Brent D. Smith, D.O., Plaintiff's primary care physician (*Plaintiff's Brief, Exhibit A*) confirms a gunshot wound to the left shoulder.  Dr. Smith proffers two theories to explain the trajectory of the shot:[3]

> "Only two possibilities exist for a wound pattern of this type.  One is that Mr. Winfrey was standing with his back facing his assailant.  The other is that Mr. Winfrey was standing with his left shoulder facing his assailant with his arm at his side.  An outstretched arm in this position would create too acute of an angle for a bullet to enter his arm.  Mr. Winfrey is noted to be right hand dominant."

Contrary to Dr. Smith's implicit suggestion that his clinical findings are inconsistent with Officer Nill's claim that the Plaintiff pointed the gun at him, it is not necessarily true that Plaintiff would have had his left arm outstretched in order to have displayed the weapon in a threatening manner.  This was, after all, a short-barreled shotgun, and it would have been

---

[3]There is no indication that Dr. Smith has any training or expertise in forensic medicine or ballistics.

-11-

quite possible for Plaintiff, standing at an angle to Nill, to point it in the officer's direction while keeping his upper left arm in a position perpendicular to the ground.

Under the objective test of *Graham* and *Gaddis*, then, the reasonableness of Officer Nill's action in shooting the Plaintiff must be assessed in the context of these circumstances: he heard gunshots and ran to investigate; he encountered the Plaintiff, who possessed a firearm; he ordered the Plaintiff to drop the gun; rather than complying with that order, Plaintiff, with his left shoulder facing the officer, displayed the weapon in a fashion perceived as threatening to the officer in the course of a rapidly developing situation.   In an excessive force case, "'[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. at 396.  Viewing this record as a whole, and even giving the Plaintiff the benefit of all *reasonable* inferences that might be drawn from the evidence, no rational trier of fact could find that Nill used excessive force in violation of the Fourth Amendment. *See Simmons-Harris v. Zelman*, *supra*, 234 F.3d at 951.  Absent a constitutional violation, Plaintiff cannot defeat the claim of qualified immunity. *Saucier v. Katz, supra*.  There being no genuine issue of material fact, summary judgment is appropriate with regard to the shooting.

## B.   The Handcuffing

It is not disputed after he was shot, Plaintiff was arrested and handcuffed.  The Complaint itself refers to the handcuffing not as a separate element of excessive force, but rather to give context to the claim that Officer Nill unreasonably beat the Plaintiff:

"Defendant, Robert Nill, approached Plaintiff from the back of the home located at 16550, and shot the Plaintiff in the arm, and then while the Plaintiff was handcuffed, struck the Plaintiff numerous times, and pushed the Plaintiff's mother down to the ground." *Complaint*, ¶8.

For the first time in his response to the motion for summary judgment, Plaintiff alleges that the handcuffs were excessively tightened, aggravating the gunshot wound:

"Plaintiff also contends that, Defendant Nill to injure him further tighten excessively the metal handcuffs around his wrists to cause him to bleed profusely from the gunshot would to the back of his shoulder and the exit wound in the elbow area of his arm while at the same time punching plaintiff repeatedly in the back of his head, face, and neck area." *Plaintiff's Brief*, p. 10.

There is no evidence to support Plaintiff's newly-articulated claim. Unlike *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993), there is no allegation or evidence that Plaintiff complained about the tightness of the handcuffs or their effect on his wound. In *Walton*, the Plaintiff, who had been stopped for a traffic violation, claimed that "she begged not to be handcuffed because of her injured shoulder." *Id*. at 1342. And while under certain circumstances an excessive force claim can be maintained for cuffing an individual's wrists too tightly, *see Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001), there is simply no evidentiary basis to reasonably credit Plaintiff's belated claim in this case.

To the extent that Plaintiff contends that handcuffing was *per se* inappropriate, that claim has no merit in light of the circumstances of his arrest, including the fact that he had been armed with a weapon. Again, under *Graham*, the incident must be judged objectively, from the perspective of a reasonable officer on the scene. Therefore, summary judgment should be granted as to the claim of unreasonably tight handcuffing, even assuming that

-13-

claim was properly raised in the Complaint.

## C.    The Beating

The alleged striking of the Plaintiff presents a much closer question.  The police statements of Randall Swanigan (Plaintiff's Exhibit G) and Doris Banks (Plaintiff's Exhibit H) corroborate the Plaintiff's claim that he was punched at least once and pushed around after he had been shot and after he was handcuffed.  In *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004), the Court cited extensive Circuit precedent to the effect that force applied after a suspect is subdued can constitute excessive force:

> "We have also consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right. See, *e.g., Phelps v. Coy*, 286 F.3d 295, 301 (6th cir. 2002) ('[T]here was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was.'); *McDowell v. Rogers*, 863 F.2d 1320, 1307 (6th cir. 1988) ('[A] totally gratuitous blow with a policeman's nightstick may cross the constitutional line.'); *Lewis v. Downs*, 774 F.2d 711, 715 (6th Cir. 1985) ('The unprovoked and unnecessary striking of a handcuffed citizen in the mouth with a nightstick is clearly excessive.')."

The evidence supports a reasonable inference that after being shot and handcuffed, the Plaintiff was sufficiently subdued that being struck or punched even once–much less repeatedly, as he alleges–would have been a gratuitous and constitutionally excessive application of force.  While the facts might also support a contrary inference that despite being wounded and handcuffed Plaintiff was obstreperous and unsubdued, Plaintiff has met his burden of showing that there is "evidence on which the jury could reasonably find for" him.  *Anderson v. Liberty Lobby*, 477 U.S. at 252.  There being a genuine issue of material

-14-

fact, summary judgment is inappropriate as to Plaintiff's claim that he was beaten by Defendant Nill after being handcuffed.[4]

Further, because the right to be free from non-deadly excessive force such as punching and beating was clearly established at the time of the incident, *Graham v. Connor, supra; Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996), Defendant is not protected by qualified immunity.  *Saucier v. Katz, supra*.

### B.    Violation of Michigan Constitution

Although Plaintiff articulates Count III of his Complaint as "Breach of Statutory Duties," the body of the Complaint cites and relies on Michigan Constitution 1963, Art. 1 (due process).  *Complaint*, ¶¶14-15.  However, it is settled Michigan law that the Michigan Constitution provides no remedy analogous to §1983 where the alleged wrongdoer is a municipality or, as in the present case, a municipal employee.  *Jones v. Powell*, 462 Mich. 329 (2000); *Fruman v. City of Detroit*, 1 F.Supp.2d 665, 675 (E.D. Mich. 1998) ("Because the Defendant in this case is a municipality, in light of the *Jones* decision, Defendant's Motion for Summary Judgment will be granted on Plaintiff's claim of violation of due process rights under the Michigan Constitution").[5]  Thus, Defendant is entitled to summary

---

[4]I note that in his motion for summary judgment, Defendant Nill focused on the shooting, and did not specifically discuss Plaintiff's claim of a beating.  Thus, Defendant failed to identify portions of the record which demonstrate the absence of a genuine dispute over material facts.

[5]*Fruman* was based on the Court of Appeals decision in *Jones v. City of Detroit*, 227 Mich.App. 662, 577 N.w.2d 130 (1998), which the Supreme Court affirmed in *Jones v. Powell*.

-15-

judgment on Plaintiff's state constitutional claim.

### C.    Conspiracy to Deny Constitutional Rights

Plaintiff's Complaint may fairly be construed to allege a conspiracy claim under 42

U.S.C. §1985.  *See Complaint*, ¶¶ 22-23.

42 U.S.C. § 1985(3) proscribes conspiracies to deprive persons of their civil rights

under the law, and is directed at racial or otherwise protected class-based discriminatory

animus behind the conspirators' actions.  *Griffin v. Breckenridge*, 403 U.S. 88, 101-02, 91

S.Ct. 1790, 29 L.Ed.2d 338 (1971); *United Brotherhood of Carpenters and Joiners of*

*America v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).  To state a claim

under § 1985(3), the complaint must allege a race or class-based discriminatory animus.

*Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992).  The Plaintiff in the present case has

made no such allegation, and therefore any § 1985(3) claim must be dismissed under Rule

12(b)(6), for failure to state a claim on which relief can be granted.

### D.    Negligence

In seeking summary judgment on Plaintiff's state law negligence claim, Defendant

argues that "Plaintiff fails to plead that Defendants acted in a grossly negligent manner;

instead, Plaintiff's [sic] contends their conduct, if wrongful at all, amounted only to mere

negligence."  *Defendant's Brief*, sec. (e).  Defendant goes on to argue that he is protected

from suit under Michigan's governmental immunity statute, M.C.L. §691.1407(2), absent a

showing that he acted with gross negligence.  *Id.*

At ¶12 of his Complaint, Plaintiff states that "the acts and/or omissions by the

Defendant's [sic] are of an extreme and outrageous nature so as to constitute, willful, wanton reckless, and intentional conduct."  In view of the Plaintiff's specific factual allegations, including the alleged striking of the Plaintiff after he had been shot and handcuffed, and with deference to the general principle that *pro se* complaints are to be construed liberally, this Complaint may be fairly construed to include a claim of the common law tort of gross negligence.

The immunity statute on which Defendant relies, M.C.L. §691.1407(2), protects municipal employees who reasonably believe their actions are within the scope of their authority and who are exercising governmental functions only if the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." M.C.L. §691.1407(2)c.  The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Id.*  In addition, a state defendant is not liable under a gross negligence theory unless he or she owes a particular duty to the plaintiff.  "In Michigan, public officials cannot be held liable in tort, whether grounded upon negligence, gross negligence, wanton, willful and reckless conduct, or deliberate indifference, absent a duty to the plaintiff in particular, as opposed to the public at large." *Mercer v. Jaffe, Snider, Raitt and Heuer, P.C.*, 713 F.Supp. 1019, 1031 (W.D. Mich. 1989).

For the reasons set forth above in the §1983 discussion, Plaintiff has not set forth a sufficient basis to sustain a gross negligence action as to the shooting or the handcuffing. However, Defendant is not entitled to either summary judgment or Rule 12(b)(6) dismissal

-17-

on the gross negligence claim arising out of the alleged striking or beating.

First, a police officer does owe a particularized duty to an individual, such as the Plaintiff, who is in his or her custody.  In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 199-200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Court held that "when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *See also, Schroder v. City of Fort Thomas*, __F.3d__, 2005 WL 1529445 (6th Cir. 2005).

Secondly, as discussed above, the Plaintiff has presented evidence to reasonably support his claim that after he was shot and handcuffed, Officer Nill struck him.  Even if Nill's alleged conduct was not intentional, there is a genuine issue of material fact as to whether it constituted gross negligence as defined by Michigan law, that is, whether it was "so reckless as to demonstrate a substantial lack of concern for whether an injury results."

### E.    Intentional Infliction of Emotional Distress

Plaintiff also alleged a state law claim of intentional infliction of emotional distress. *See Complaint*, p.2 ("Count V: Tortious Infliction of Emotional Distress").  Defendant has neither asked for summary judgment nor discussed this claim in the present motion.  That being the case, the Court ordinarily would be precluded from *sua sponte* dismissing the claim under Rule 12(b)(6) unless the plaintiff is given notice and the opportunity to amend the complaint.  *See Tingler v. Marshall*, 716 F.2d 1109, 1111-12 (6th Cir. 1993).  However, where a claim is frivolous, a court may dismiss for lack of subject matter jurisdiction under

-18-

Rule 12(b)(1).  "[A] district court may, at any time, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *See also Higgins v. Lavine*, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (patently frivolous case divests the district court of jurisdiction).  A case is frivolous if it lacks arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

I recommend that the Plaintiff's state law claim of intentional infliction of emotional distress be dismissed as frivolous under Rule 12(b)(1).

To establish a Michigan common law claim of intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999).  *See also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985).  Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 237 Mich.App. at 674.  This is a demanding standard: It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally.  *Id.* The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead

him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603.

The Defendant's alleged actions in this case, even if found to have violated §1983 or to have been grossly negligent, simply do not rise to the extreme level required to maintain a claim of intentional infliction of emotional distress. That claim should therefore be dismissed *sua sponte*.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be DENIED as to (1) the claimed violation of 42 U.S.C. §1983 arising out of the alleged striking or beating of the Plaintiff after he was handcuffed, and (2) the state law claim of gross negligence arising out of the alleged striking or beating of the Plaintiff after he was handcuffed. I recommend that Defendant's Motion be GRANTED in all other respects. Further, I recommend that Plaintiff's state law claim of intentional infliction of emotional distress be dismissed *sua sponte* as frivolous, thereby depriving the Court of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 13, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 13, 2005.

s/G.K. Wilson
Judicial Assistant